FILED

APR 09 2019

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Case No. _____ |
| v. | In violation of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1957 (Money Laundering), 26 U.S.C. § 7201 (Tax Evasion) |
| THOMAS HULING | |

CR19    037 JM

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

Introduction

At times relevant to this Indictment:

1.    Defendant THOMAS HULING resided in East Greenwich and West Warwick, Rhode Island.   Between approximately 2000 and 2008, defendant HULING was a mortgage broker.

2.    Between approximately 2008 and 2018, HULING held himself out as an investment broker, entrepreneur, and funds manager, soliciting funds, including loans, from individual investors for various purported investment projects.

3.    The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering and enforcing the tax laws of the United States, and collecting taxes owed to the United States.

4.    In general, individual taxpayers are required to report their income, any allowable deductions, and tax liability on U.S. Individual Income Tax Returns, Forms 1040 ("Forms 1040"), and related IRS Schedules and Forms attached thereto.

5.     U.S. Income Tax Returns for an S Corporation, Forms 1120S ("Forms 1120S"), are a type of annual return used by corporations to declare receipts, income, and deductible expenses.   S Corporations do not themselves have tax liability for net business income.   Instead, the S Corporation's owner reports any net business income or loss from the S Corporation as "flow through" income or loss on the owner's Form 1040.

## Huling's Scheme to Defraud Investors

6.     From in or about 2008 to in or about October 2018, THOMAS HULING, the defendant, did knowingly and willfully devise a scheme and artifice to defraud investors who entrusted funds to him, and to obtain money from these investors by means of materially false and fraudulent pretenses, representations, and promises.   To execute the scheme, HULING, among other things: (i) solicited millions of dollars of funds under false pretenses, and by making false and fraudulent promises and representations to induce the investors; (ii) misappropriated and converted investors' funds to HULING's own benefit and the benefit of others without the knowledge or authorization of the investors; (iii) lulled the investors with false and fraudulent excuses and promises in order to discourage legal action when the investors complained that their funds had not been returned as promised; (iv) placated and appeased certain earlier investors by paying them back using new investor monies; and (v) used multiple nominee entities and shell companies, and multiple bank accounts to receive, transfer,

and spend investor proceeds, thereby attempting to obfuscate the source and disposition of funds.

7.    It was part of HULING'S fraud scheme that he would and did solicit funds from investors by making false and fraudulent promises and representations. HULING represented and led investors to believe that the funds they provided would be used for the investment projects he was promoting, and that substantial investment returns that carried little to no risk would be realized within short periods of time.    To enhance his credibility and build trust, HULING, among other things, would at times incorporate religion and the possibility of charitable good works into his sales pitch, and claim that he had association with well-known individuals who in turn had interest in his investments.    HULING would also promote different projects to the same investor to improve his chances at obtaining funds.    Examples of HULING'S false and fraudulent inducements, promises, and representations include, but are not limited to:

    a.    Between in or about 2008 and in or about 2011, defendant HULING fraudulently solicited investors to provide funds for offshore "private placement" investments and high-yielding bond trading platforms by leading the investors to believe he would use their funds for these investments.    HULING promised high returns within a short time frame, including returns to some investors as high as 450 percent within forty days.    HULING further led these individuals to believe the

purported trading platforms and investment funds he was pitching carried little if any risk;

   b. Between in or about 2010 and in or about 2016, defendant HULING solicited funds from investors, including two to whom he pitched the high-yielding trading platform investments, for the purported purpose of buying and developing technology originating in Germany designed to reduce car emissions.   HULING made false and fraudulent representations concerning, among other things: (i) how the funds provided by the investors would be used; (ii) outside interest in the technology by well-known individuals; and (iii) the investors' degree of ownership in the technology and related business; and

   c. Between in or about 2017 and in or about 2018, defendant HULING raised funds from investors purportedly for an internet marketing and advertising platform for businesses.   To lure these individuals, HULING, among other things, represented that the funds provided by the investors would be used for the purchase and development of the marketing program.

   8. It was part of the scheme that, upon receiving funds from the investors into bank accounts he controlled, defendant HULING misappropriated, diverted, converted, and spent investor monies to fund his lifestyle.   Such expenditures included, but were not limited to: funding for substantial improvements to his residence; multiple luxury vehicles, including a Cadillac Escalade and a Mercedes Benz;

motorcycles and scooters; membership and golf fees at multiple country clubs and golf courses; clothes and fashion; food, including substantial spending at restaurants; family pet expenses; vacations and travel; and gambling at casinos.   Between 2008 and 2018, defendant spent millions in investor funds on living expenses, unbeknownst to the investors, and contrary to the representations he made to them.

9.     It was further part of the scheme that when the promised returns did not materialize, and the investors expressed their worry and concern to HULING about their investments, defendant attempted to lull the investors and string them along with false and fraudulent excuses and promises.   Often times HULING refused to return calls and avoided speaking to investors.

10.     It was part of the scheme that HULING further attempted to placate and appease earlier investors by paying them with funds raised from new investors.   For example, HULING would and did fraudulently repay certain trading platform investors with funds raised from car emissions technology investors.

11.     It was part of HULING's scheme that he used multiple entities and shell companies, as well as multiple bank accounts at different domestic and foreign banks, to commingle, obfuscate and conceal the source, movement, and disposition of investor funds.   Between in or about 2008 and 2018, defendant opened more than fifty bank accounts at nine different banks using approximately eight different entity names. Defendant commingled funds from different investment projects, executed multiple

transfers between accounts, and ultimately withdrew funds from multiple accounts using debit cards, checks, and substantial cash to pay for personal expenditures. The entities defendant HULING established and used to facilitate his scheme to defraud included, but were not limited to:

a. ~~TH Enterprises, LLC;~~

b. Global Funding Group, LLC;

c. Global Investment Company, S.A.;

d. 46 Well Realty, LLC;

e. Global Technology, LLC;

f. World Holding Group, LLC; and

g. WebDreams, LLC.

12. It was in furtherance of the scheme that defendant HULING, between 2008 and 2018, used interstate wires and electronic communications to receive funds from investors, to pay funds to investors, to communicate with investors, to transfer funds between bank accounts, and to withdraw funds from bank accounts to spend on his lifestyle.

13. HULING fraudulently obtained approximately $14 million in investor funds. While paying earlier investors back with new investor monies as part of his scheme, HULING caused a loss to the remaining investors totaling more than $6 million.

## The Tax Evasion Scheme

14.     Between in or about 2009 through in or about April 2018, defendant HULING, while defrauding investors, simultaneously endeavored to defraud the United States.   While living a lifestyle supported by investors' funds, defendant HULING reported no taxable income, paid no income taxes, and committed multiple affirmative acts in an effort to conceal his income and mislead the IRS.

15.     In or about June 2009, defendant HULING belatedly filed, after the deadline imposed by law, a joint U.S. Individual Income Tax Return for 2007, acknowledging that he had an income tax due and owing totaling $26,520.   Defendant did not pay his self-assessed tax for 2007.

16.     In or about August 2009, the IRS began sending collection notices to defendant HULING demanding payment of his 2007 past-due taxes.   Still, HULING did not pay the taxes due and owing.

17.     Knowing full well of his outstanding tax bill for 2007, and determined to defraud the United States concerning subsequent tax years, defendant HULING, between 2009 and 2018, engaged in a course of conduct designed to thwart IRS collection, conceal his income, and evade the assessment of taxes, including, but not limited to:

a.     Establishing and using multiple nominee entities and shell companies, and utilizing multiple bank accounts at different domestic and foreign

banks in the names of these entities, in order to conceal and obscure the source and disposition of funds;

b.     Using multiple entity and shell company bank accounts to directly fund personal expenditures, including by using debit cards tied to those entity accounts;

c.     Making extensive use of cash;

d.     Causing the manipulation and falsification of the books and records of his entities in order to disguise his personal expenditures and conceal distributions of income.   HULING, among other things, would cause his bookkeeper to fraudulently book as loans income he took out of shell company bank accounts when he had no intent to repay;

e.     Causing to be provided false and fraudulent information to his tax return preparer that overstated expenses and understated income;

f.     Causing to be prepared and filed with the IRS false and fraudulent Forms 1040 for the tax years 2009, 2010, and 2011 reporting no taxable income and no tax due, despite knowing full well that he had substantial income to report, and substantial tax to pay, for these years;

g.     Causing to be prepared and filed with the IRS false and fraudulent Forms 1120S in which HULING claimed business expenses and corporate losses, losses

that he could purportedly offset against any personal income.   The fraudulent

corporate tax returns he caused to be filed, included, but are not limited to:

        i.      In or about November 2015, Forms 1120S, for TH

Enterprises, for the tax years 2012, 2013, and 2014, claiming false and fraudulent

business expenses and losses.   HULING claimed sole ownership of TH Enterprises, a

purported "flow-through" entity whose net losses would be deductible on his

individual tax returns.

        ii.     In or about February 2016, Forms 1120S, for 46 Well Realty,

for the tax years 2009 and 2010, claiming false and fraudulent business expenses and

"flow-through" losses to HULING as sole owner;

        iii.    In or about March 2016, Forms 1120S, for Global Funding

Group, for the tax years 2009 and 2010, claiming false and fraudulent business expenses

and "flow- through" losses to HULING as sole owner;

        h.     Failing to file any individual income tax returns for the tax years

2012 through 2017;

        i.     Titling personal assets, including real estate, luxury cars, and

motorcycles, in the names of nominee entities; and

        j.     Providing false and fraudulent statements to IRS special agents on

or about December 2, 2015, after being notified of a criminal investigation, related to,

among other items, his income, expenses, and business activities for the 2009, 2010, and 2011 tax years.

## COUNTS ONE through TWELVE
### (Wire Fraud)

18.     Paragraphs 1 through 13 of this Indictment are incorporated by reference herein.

19.     On or about the dates set forth below, in the District of Rhode Island and elsewhere, the defendant,

THOMAS HULING,

for the purpose of executing and attempting to execute his above-described scheme and artifice to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises, did cause to be transmitted in interstate commerce by means of wire communications certain writings, signs, signals, and sounds, the following:

| COUNT | APPROXIMATE DATE(S) | DESCRIPTION OF WIRE TRANSMISSIONS |
|-------|---------------------|-----------------------------------|
| 1 | 5/7/2014 | Withdrawal and deposit of $20,000 between HULING controlled accounts in Rhode Island, from Navigant Credit Union Account #5302 to account #6008 in the name of "World Holding Group LLC," with wire transmission routed through New Jersey. |
| 2 | 6/9/2014 | Withdrawal and deposit of $10,000 between HULING controlled accounts in Rhode Island, from Navigant Credit Union Account #5302 to account #6016 in the name of "World Holding Group LLC," with wire transmission routed through New Jersey. |

| COUNT | APPROXIMATE DATE(S) | DESCRIPTION OF WIRE TRANSMISSIONS |
|---|---|---|
| 3 | 8/2/2014 | Electronic debit card purchase, $200 at Exeter Country Club, using Navigant Credit Union Account #6008 in the name of "World Holding Group, LLC" in Rhode Island, with electronic transfer routed through New Jersey. |
| 4 | 8/6/2014 | Electronic debit card purchase, $1,049 at Briden Nurseries, using Navigant Credit Union Account #6008 in the name of "World Holding Group, LLC" in Rhode Island, with electronic transfer routed through New Jersey. |
| 5 | 10/22/2014 | Electronic debit card purchase, $227 at Mercedes-Benz Warwick, using Navigant Credit Union Account #6008 in the name of "World Holding Group, LLC" in Rhode Island, with electronic transfer routed through New Jersey. |
| 6 | 11/19/2014 | Electronic debit card purchase, $1,392 at the Guitar Center, using Navigant Credit Union Account #5302 in the name of Thomas Huling in Rhode Island , with electronic transfer routed through New Jersey. |
| 7 | 11/26/2014 | Electronic debit card purchase, $4,635 at Valley Country Club, using Navigant Credit Union Account #6008 in the name of "World Holding Group, LLC" in Rhode Island, with electronic transfer routed through New Jersey. |
| 8 | 6/2/2015 | Email from "Global Technology" to Individual A.Z. in Rhode Island, via an email server located outside of Rhode Island, with promotional documents concerning the car emissions technology investment attached. |
| 9 | 9/3/2015 | Electronic debit card purchase, $1,042 at the Foxwoods Resort, using Navigant Credit Union Account #5302 in Rhode Island, with electronic transfer routed through New Jersey. |
| 10 | 10/14/2016 | Wire Transfer of $250,000, from Individual R.R.'s bank account at Washington Trust in Rhode Island to defendant HULING's bank account, Navigant Credit Union Account #9007 in the name of "Global |

| COUNT | APPROXIMATE DATE(S) | DESCRIPTION OF WIRE TRANSMISSIONS |
|---|---|---|
|  |  | Technology, LLC" in Rhode Island, with electronic transmission routed outside of Rhode Island. |
| 11 | 1/10/2018 | Wire transfer of $21,000, from Individual J.D.'s bank account at Family Trust FCU in South Carolina to defendant HULING's bank account, Citizens Bank Account #5419, in the name of "WebDreams, LLC" in Rhode Island. |
| 12 | 2/20/2018 | Wire transfer of $22,500, from Individual D.M.'s bank account at Hometown Bank, in Massachusetts, to defendant HULING's bank account, Citizens Bank Account #5419, in the name of "WebDreams, LLC" in Rhode Island. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS THIRTEEN and FOURTEEN
### (Money Laundering)

20.    Paragraphs 1 through 13 of this Indictment are incorporated by reference herein.

21.    On or about each date listed below, in the District of Rhode Island and elsewhere, the defendant,

THOMAS HULING,

did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity – wire fraud in violation of Title 18, United States Code, Section 1343, as described below:

12

| COUNT | APPROXIMATE DATE(S) | DESCRIPTION OF TRANSACTION |
|-------|---------------------|----------------------------|
| 13 | 4/29/2014 | Check #125, in the amount of $15,190, drawn on Navigant Credit Union Account #5302, payable to Motorcycles of Manchester for the Purchase of a 2012 Can-Am Spyder Motorcycle |
| 14 | 7/7/2014 | Check #126, in the amount of $34,258, drawn on Navigant Credit Union Account #5302, payable to CarMax for the Purchase of a 2013 Mercedes-Benz SL550 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

### COUNT FIFTEEN
#### (Tax Evasion – Evasion of Payment)

22.　　Paragraphs 1 through 17(g), and 17(i) through 17(j), of this Indictment are incorporated by reference herein.

23.　　From in or about August 2009 to in or about April 2018, in the District of Rhode Island and elsewhere, the defendant,

THOMAS HULING,

a resident of Rhode Island, did willfully attempt to evade and defeat the payment of income taxes due and owing by him to the United States of America, for the calendar year 2007, by committing the following affirmative acts, among others:

　　a.　　Establishing and using multiple nominee entities and multiple associated bank accounts to deposit and transfer funds, and to conceal and obscure the source and disposition of income;

　　b.　　Using entity bank accounts to pay for personal expenditures;

13

c.      Making extensive use of cash;

d.      Causing the manipulation and falsification of the books and records of his entities to disguise distributions, personal expenditures, and other income to him, including by falsely and fraudulently characterizing personal distributions and expenditures as loans;

e.      Providing and causing to be provided to his accountant and tax return preparer false and fraudulent information concerning income and expenses;

f.      Causing to be prepared and filed with the IRS false and fraudulent individual income tax returns;

g.      Causing to be prepared and filed with the IRS false and fraudulent corporate tax returns;

h.      Titling personal assets, such as real estate and vehicles, in the names of nominee entities; and

i.      Providing false and fraudulent statements to IRS special agents material to his income, expenses, and business activities.

All in violation of Title 26, United States Code, Section 7201.

## COUNT SIXTEEN
### (Tax Evasion – Evasion of Assessment)

24.     Paragraphs 1 through 17(g), and 17(i) through 17(j), of this Indictment are incorporated by reference herein.

25.     From in or about January 2009 through in or about March 2016, in the District of Rhode Island and elsewhere, the defendant,

### THOMAS HULING,

a resident of Rhode Island, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2009, by committing the following affirmative acts, among others: (a) preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent 2009 U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service; (b) establishing and using multiple nominee entities and shell companies, as well as multiple bank accounts tied to those entities, to deposit, withdraw, and transfer funds; (c) using entity bank accounts to pay for personal expenditures; (d) making extensive use of cash; (e) causing to be manipulated and falsified the books and records of his entities to disguise his income; (f) causing to be provided false and fraudulent information to his tax return preparer; (g) causing to be prepared and filed false and fraudulent 2009 corporate tax returns in the names of TH Enterprises, 46 Well Realty, and Global Funding Group claiming expenses, and flow through losses to HULING; and (h) on or about December 2, 2015, providing false and

fraudulent statements to IRS special agents material to his 2009 income, expenses, and business activities:

All in violation of Title 26, United States Code, Section 7201.

### COUNT SEVENTEEN
(Tax Evasion – Evasion of Assessment)

26.     Paragraphs 1 through 17(g), and 17(i) through 17(j), of this Indictment are incorporated by reference herein.

27.     From in or about January 2010 through in or about March 2016, in the District of Rhode Island and elsewhere, the defendant,

THOMAS HULING,

a resident of Rhode Island, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2010, by committing the following affirmative acts, among others: (a) preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent 2010 U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service; (b) establishing and using multiple nominee entities and shell companies, as well as multiple bank accounts tied to those entities, to deposit, withdraw, and transfer funds; (c) using entity bank accounts to pay for personal expenditures; (d) making extensive use of cash; (e) causing to be manipulated and falsified the books and records of his entities to disguise his income; (f) causing to be provided false and fraudulent information to his tax return preparer; (g) causing to be

prepared and filed false and fraudulent 2010 corporate tax returns in the names of TH Enterprises, 46 Wells Realty, and Global Funding Group claiming expenses, and flow through losses to HULING; and (h) on or about December 2, 2015, providing false and fraudulent statements to IRS special agents material to his 2010 income, expenses, and business activities:

All in violation of Title 26, United States Code, Section 7201.

## COUNT EIGHTEEN
### (Tax Evasion – Evasion of Assessment)

28.     Paragraphs 1 through 17(g), and 17(i) through 17(j), of this Indictment are incorporated by reference herein.

29.     From in or about January 2011 through in or about December 2015, in the District of Rhode Island and elsewhere, the defendant,

THOMAS HULING,

a resident of Rhode Island, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2011, by committing the following affirmative acts, among others: (a) preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent 2011 U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service; (b) establishing and using multiple nominee entities and shell companies, as well as multiple bank accounts tied to those entities, to deposit, withdraw, and transfer funds; (c) using entity bank accounts to pay for personal

expenditures; (d) making extensive use of cash; (e) causing to be manipulated and falsified the books and records of his entities to disguise his income; (f) causing to be provided false and fraudulent information to his tax return preparer; (g) causing to be prepared and filed false and fraudulent 2011 corporate tax returns in the names of TH Enterprises and 46 Wells Realty claiming expenses, and flow through losses to HULING; and (h) on or about December 2, 2015, providing false and fraudulent statements to IRS special agents material to his 2011 income, expenses, and business activities:

All in violation of Title 26, United States Code, Section 7201.

## COUNT NINETEEN
### (Tax Evasion – Evasion of Assessment)

30.     Paragraphs 1 through 17(g), and 17(i) through 17(j), of this Indictment are incorporated by reference herein.

31.     During the calendar year 2012, the defendant,

THOMAS HULING,

who was a resident of Rhode Island, had and received taxable income upon which there was income tax due and owing to the United States of America.    Knowing and believing the foregoing facts, and failing to make an income tax return on or before April 15, 2013, as required by law, to any proper officer of the IRS, and to pay the income tax to the IRS, defendant HULING, from in or about January 2012 through in or about December 2015, in the District of Rhode Island and elsewhere, did willfully

attempt to evade and defeat the said income taxes due and owing by him to the United States of America for said calendar year by committing the following affirmative acts, among others: (a) establishing and using multiple nominee entities and shell companies, as well as multiple bank accounts tied to those entities, to deposit, withdraw, and transfer funds; (b) using nominee entity bank accounts to pay for personal expenditures; (c) making extensive use of cash; (d) causing to be manipulated and falsified the books and records of his entities to disguise his income; (e) causing to be provided false and fraudulent information to his tax return preparer; (f) causing to be prepared and filed a false and fraudulent 2012 corporate tax return in the name of TH Enterprises claiming expenses, and flow through losses to HULING; and (g) providing false and fraudulent statements to IRS special agents material to his 2012 income, expenses, and business activities.

All in violation of Title 26, United States Code, Section 7201.

## COUNT TWENTY
### (Tax Evasion – Evasion of Assessment)

32.    Paragraphs 1 through 17(g), and 17(i) through 17(j), of this Indictment are incorporated by reference herein.

33.    During the calendar year 2016, the defendant,

THOMAS HULING,

who was a resident of Rhode Island, had and received taxable income upon which there was income tax due and owing to the United States of America.    Knowing and

believing the foregoing facts, and failing to make an income tax return on or before April 18, 2017, as required by law, to any proper officer of the IRS, and to pay the income tax to the IRS, defendant HULING, from in or about January 2016 through in or about April 2017, in the District of Rhode Island and elsewhere, did willfully attempt to evade and defeat the said income taxes due and owing by him to the United States of America for said calendar year by committing the following affirmative acts, among others: (a) Using nominee entities and shell companies to deposit income and to pay for personal expenditures; and (b) making extensive use of cash.

All in violation of Title 26, United States Code, Section 7201.

## COUNT TWENTY-ONE
### (Tax Evasion – Evasion of Assessment)

34.    Paragraphs 1 through 17(g), and 17(i) through 17(j), of this Indictment are incorporated by reference herein.

35.    During the calendar year 2017, the defendant,

THOMAS HULING,

who was a resident of Rhode Island, had and received taxable income upon which there was income tax due and owing to the United States of America.   Knowing and believing the foregoing facts, and failing to make an income tax return on or before April 17, 2018, as required by law, to any proper officer of the IRS, and to pay the income tax to the IRS, defendant HULING, from in or about January 2017 through in or about April 2018, in the District of Rhode Island and elsewhere, did willfully attempt to

evade and defeat the said income taxes due and owing by him to the United States of America for said calendar year by committing the following affirmative acts, among others: (a) Using nominee entities and shell companies to deposit income and to pay for personal expenditures; and (b) making extensive use of cash.

All in violation of Title 26, United States Code, Section 7201.

## FORFEITURE ALLEGATIONS

The Grand Jury for the District of Rhode Island further charges that:

1.     Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and 982(a)(1), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction on Counts One through Fourteen of this Indictment.

### Wire Fraud Forfeiture

2.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1343 set forth in Counts One through Twelve of this Indictment, the defendant,

THOMAS HULING,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), 982(a)(2), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to a sum of money equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds involved in the offense.

## Money Laundering Forfeiture

3.    Upon conviction of an offense in violation of Title 18, United States Code, Section 1957 set forth in Counts Thirteen and Fourteen of this Indictment, the defendant,

THOMAS HULING,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to a sum of money equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds involved in the offense.

## Substitute Assets

4.    If any of the property described above, as a result of any act or omission of the defendant:

  a.  cannot be located upon the exercise of due diligence;

  b.  has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided
      without difficulty,

the United States of America shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and 18 U.S.C. § 982(b)(1).

All in violation of Title 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2), and Title 28 U.S.C. § 2461(c).

Date: _4/9/19_                      **REDACTED**



RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

Date: _4/9/19_          By: _____
                        JOHN N. KANE, JR.
                        Assistant Chief
                        U.S. Department of Justice, Tax Division
                        Northern Criminal Enforcement Section


AARON L. WEISMAN
United States Attorney

Date: _4/9/19_          By: _Sandra R. Hebert by Jn Ke_
                        SANDRA R. HEBERT
                        Assistant U.S. Attorney

24